UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EDUARDO COLON-NALES,

    Petitioner,

v.                                    Case No. 5:21-cv-168-TKW/MJF

HARRISON,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Eduardo Colon-Nales ("Colon-Nales"), a federal inmate currently confined at the Federal Correctional Institution in Marianna, Florida, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging a prison disciplinary action that resulted in the loss of good-conduct time. Doc. 1. Respondent filed an answer, providing relevant portions of the disciplinary record. Doc. 14. Despite being afforded an opportunity to file a response, Colon-Nales has elected not to file one. *See* Doc. 15. The undersigned recommends that Colon-Nales's petition for habeas relief be denied because the petition is without merit.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

# I. Background

## A. Summary of Colon-Nales's Allegations/Claim

Colon-Nales challenges an August 27, 2019 disciplinary proceeding, in which a Disciplinary Hearing Officer ("DHO") found him guilty of violating the Bureau of Prison's "Code 113 – Possessing Drugs/Alcohol." Doc. 1 at 7. Because DHO Steamer found Colon-Nales guilty of the alleged BOP Code violation, Colon-Nales was sanctioned with the loss of 41 days of good-conduct time ("GCT") and nine months of visiting privileges. Doc. 14-4 at 2. Additionally, he spent 30 days in disciplinary segregation. *Id.*

He claims that his due process rights were violated during the disciplinary process because evidence was erroneously altered and withheld from him. Doc. 1-1 at 3. As relief he seeks the following:

1. The discovery – laboratory examination results, all forensic evidence, and all technical operations establishing the result, be provided and disclosed for inspecting the reliability of the test, and qualifications of the Reporter and Examiner.

2. A new hearing be issued, within the statutory limitation, that includes the above discovery, to give Mr. Colon-Nales adequate opportunity to present new sufficient opposing evidence in the defense, and or that,

3. The conviction- (incident) be dismissed and Mr. Colon-Nales be acquitted, include having the incident report expunged, and that,

4. Any and all loss of privileges, and good-time credits, be fully restored thereof.

*Id.* (errors left in). Because Colon-Nales has presumably already served his time in disciplinary segregation and the nine months of lost visitation have elapsed, only the loss of 41 days of GCT remain at issue.

**B.    The May 9, 2019 Incident**

On May 9, 2019, SIS Technician H. Glass performed a search of Colon-Nales. Doc. 14-3 at 32. During the search, Glass observed a "purple piece of a latex glove" containing "approximately 6 ¾ ID sized pieces of suspected K2" fall off Colon-Nales's person. *Id.* The following day, the six pieces of paper were submitted to the North Carolina State Bureau of Investigation Laboratory to be examined for the presence of controlled substances. The papers were described as "one piece of blue and white paper with black gridlines on one side, one piece of white paper with black gridlines on one side, one larger piece of white paper with typing on one side, and three pieces of blue paper with typing on both sides." *Id.*

**C.    The Original Incident Report No. 3288344**

On August 6, 2019, H. Glass received the laboratory report. *Id.* at 13, 31. The laboratory report indicated that "one blue and white paper with black gridlines on one side" was analyzed and found to contain controlled substances. *Id.* at 13. Specifically, it contained

> 5-fluoro MDMB-PICA, an indole carboxamide – Schedule I Synthetic Cannabinoid
> 4-fluoro MDMB-BUTINACA, an indazole carboxamide – Schedule I Synthetic Cannabinoid. 4-fluoro MDMB-BUTINACA is a

>positional isomer of 5F-AMB, which is a Federal Schedule I controlled substance, and therefore 4-fluoro MDMB-BUTINACA is a Federal Schedule I controlled substance.
>   Net weight of material – 0.24 (+/- 0.05) gram.

Doc. 14-3 at 13.

On August 6, 2019, based on this report, H. Glass prepared an incident report. *Id.* at 31. Although the incident report correctly reflected the type of controlled substance and net weight of the controlled substance as stated in the laboratory report, this incident report erroneously reflected that a "plastic bag containing green plant material" was the origin of the positive test for controlled substances. *Id.*

**D.   Investigation of Incident Report No. 3288344**

On August 8, 2019, Counselor D. Taylor provided Colon-Nales with "Notice of Discipline Hearing before the (DHO)" and "Inmate Rights at Discipline Hearing." *Id.* at 18-19. These forms informed Colon-Nales that he was entitled to call witnesses and have a full-time staff member represent him during the disciplinary hearing. Colon-Nales, however, indicated that he did not want staff representation and did not want to call any witnesses. *Id.*

On August 15, 2019, H. Glass rewrote the incident report "to correct a typographical error," which was the original incident report's reference to the "green plant material." Doc. 14-3 at 32. The revised incident report reflects that it was the blue and white paper with black gridlines that tested positive for controlled

substances as confirmed by the laboratory report. *Id.* Colon-Nales received a copy of the revised incident report on August 16, 2019. *Id.* at 9.

On August 16, 2019, Lt. Kindstrand investigated the incident. Doc. 14-4 at 7. Colon-Nales was advised of his rights, including the right to remain silent, and he declined to make a statement regarding the incident. *Id.* Kindstrand concluded that Colon-Nales had committed the prohibited act, and he referred the investigation report to the Unit Disciplinary Committee ("UDC"). *Id.*

On August 26, 2019, Colon-Nales appeared before the UDC.[2] Doc. 14-3 at 12. The UDC noted that Colon-Nales commented that he "wants to lab." *Id.* at 10. The UDC referred the investigative report to the DHO for further action and recommended 41 days disallowance of GCT, 30 days of disciplinary segregation, and 30 days loss of commissary. *Id.*

The forms titled "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing Before the (DHO)," which Colon-Nales had previously signed, each bear the handwritten note "Rehearing 8/26/19." *Id.* at 18-19. DHO Steamer states in his declaration that the forms "were provided to Petitioner by Counselor D. Taylor" on this date. Doc. 14-5 at 3. Colon-Nales did not re-sign either form, but there is a second check mark near the spaces provided for indicating that the inmate

---

[2] Because there was a delay of more than five workdays, the Warden approved an extension excusing the delay. Doc. 14-3 at 12.

declined to have staff representation or call any witnesses. Staff member D. Denson signed both forms on August 26, 2019. Doc. 14-3 at 18-19.

On August 27, 2019, DHO Steamer conducted a hearing. On September 11, 2019, DHO Steamer completed the DHO report. The Summary of Inmate Statement in the DHO Report states:

> The DHO first discussed the incident report was rewritten and the UDC was conducted outside the typical time frames. The DHO showed the inmate the Warden's approval allowing the disciplinary process to continue and the inmate stated he had no concerns with the process. The DHO then reviewed his rights with the inmate and he confirmed that he had received a copy of the incident report. The DHO then confirmed the inmate did not wish for the assistance of a Staff Representative, did not want to call any witnesses, and had no documentary evidence to present. The DHO then read aloud section 11 of the [revised] incident report and asked the inmate if it were true. Inmate Colon-Nales admitted the charge and stated, "I was in possession of the drugs. I do drugs."

Doc. 14-3 at 34. DHO Steamer concluded that Colon-Nales had committed the act as charged. In reaching this determination, DHO Steamer relied on: (1) the investigation and investigation report written by Glass, (2) photographs of the contraband; (3) the North Carolina State Crime Laboratory report; and (4) Petitioner's own admission that he was in possession of drugs at the time of the incident. *Id.* at 35. As noted above, Colon-Nales's sanction was the disallowance of 41 days of GCT, 30 days of disciplinary segregation, and loss of visitation privileges

for nine months. *Id.* at 35. The form reflects Colon-Nales was advised of his right to appeal, and he was given a copy of the report.[3]

## II. Discussion

**A.   The BOP Did Not Violate Colon-Nales's Due Process Rights During the Disciplinary Hearing Process**

"To state a cognizable claim for the denial of due process in connection with prison discipline, a prisoner must show a protected liberty interest of which he was deprived without minimum procedural protections." *Dean-Mitchell v. Reese*, 837 F.3d 1107, 1112 (11th Cir. 2016) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974)). In the prison context, determining whether a prisoner was deprived of a liberty interest presents a unique challenge because prisoners "are already deprived of liberty in the ordinary understanding of the word." *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999). Thus, absent an "atypical and significant hardship in relation to incidents of ordinary prison life," a prisoner does not have a basis for a due process claim regarding a disciplinary action. *Sandin v. Conner*, 515 U.S. 472,

---

[3] The DHO report, Doc. 14-3 at 34-36, indicates that Colon-Nales received a copy of the DHO report on August 12, 2020. Although there are other copies of the DHO report in the record, these documents do not reflect the date or time that the DHO report was provided to Colon-Nales. Doc. 14-4 at 1-3, 6-8. Colon-Nales appealed his conviction. During the administrative appeal process, the Central Office acknowledged that Colon-Nales's receipt of the DHO Report was delayed, but the Central Office found he was not adversely affected by the delay. Doc. 14-3 at 1. The Central Office affirmed the DHO's decision. *Id.* In his habeas petition, Colon-Nales does not dispute that he received a written copy of the DHO report, and he does not challenge the delay in receiving the DHO report.

484 (1995). It is well-established that an inmate has a liberty interest in earned GCT credits and, accordingly, must receive due process before those credits are revoked. *See Wolff*, 418 U.S. at 557-58.

In *Wolff*, the Supreme Court "outlined the specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in the prison setting." *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011). In order to satisfy the due process requirements, prisoners must receive

> (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action.

*Id.* at 1213 (citing *Wolff*, 418 U.S. at 563-67).

As reflected in the attachments to Respondent's answer and summarized above, those requirements were met in this case. Specifically, the record reflects that Colon-Nales received a copy of the initial incident report on August 6, 2019, and a copy of the revised report on August 16, 2019. Doc. 14-3 at 31-32. He received the "Notice of Discipline Hearing before the (DHO)" and "Inmate Rights at Discipline Hearing" on both August 8, 2019, and August 26, 2019. *Id.* at 18-19. Colon-Nales, however, declined staff representation and declined to call any witnesses. *Id.* at 18-19, 34. Additionally, a copy of the DHO report, which included an explanation of his appellate rights, was provided to him on August 12, 2020. *Id.* at 36. Thus, it is

clear that Colon-Nales was provided due process with respect to the prison disciplinary process.

**B.     The DHO's Finding was Supported by "Some Evidence"**

In addition to the process required by *Wolff*, a disciplinary decision must be supported by "some evidence in the record." *Superintendent Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). That is the "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* at 455-56 .

This standard does not require courts "to conduct exhaustive reviews of the findings of prison disciplinary panels." *O'Bryant*, 637 F.3d at 1214 (citing *Hill*, 472 U.S. at 455). The court must simply ascertain whether "there is *any evidence in the record* that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Thus, the threshold amount of evidence required for the District Court to uphold a prison disciplinary decision is quite low. *See id.* ("Although the evidence in this case might be characterized as meager, . . . the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.").

"[T]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in

fact." *O'Bryant*, 637 F.3d at 1214 (citing *Hill*, 472 U.S. at 456). This is because "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." *Hill*, 472 U.S. at 456. Additionally, "the federal courts cannot assume the task of retrying all disciplinary disputes." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 2011); *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994). Therefore, "[r]equiring a *modicum* of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Hill*, 472 U.S. at 455 (emphasis added).

In this case, the DHO's conclusion that Colon-Nales was guilty of the charge of possession of drugs was supported by SIS Technician H. Glass's statement about having recovered the suspicious item from Colon-Nales during a pat-down, the photographs of the contraband, the laboratory report, and most importantly, Colon-Nales's admission that he was in possession of the drugs. Doc. 14-3 at 35. This is more than enough evidence to meet the Supreme Court's requirement that there be "some evidence" in the record to support DHO Steamer's finding.

C. **Right to Review the Laboratory Results**

Finally, Colon-Nales claims that his due process rights were violated because the lab results were improperly withheld and altered, and as such, he did not have

the opportunity to review the laboratory report and its technical specifications to "prepare his defense." Doc. 1-1 at 1, 3. Colon-Nales claims that he had diligently tried to obtain a copy of the laboratory results and, absent such results, there was no proof that he committed the infraction of which he was found guilty. Doc. 14-3 at 26.

Colon-Nales relies on authorities which hold that defendants whom the government is prosecuting criminally have a right to exculpatory evidence. Doc. 1-1 (first citing *United States v. Noe*, 821 F.2d 604 (11th Cir. 1987); then citing *United States v. Mackn*, 793 F.3d 703 (7th Cir. 2015)). Prison disciplinary proceedings, however "are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Inmates "facing disciplinary proceedings do not have a constitutional right to the disclosure of material, exculpatory evidence." *Major v. Toole*, No. 5:15-CV-483 MTT, 2018 WL 5811484, at *4 (M.D. Ga. Nov. 6, 2018) (first citing *Kenney v. Barron*, 239 F. App'x 494, 495 (11th Cir. 2007); then citing *O'Connor v. Kelley*, No. 3:10cv360/LAC/EMT, 2014 WL 1133522, at *11 (N.D. Fla. Mar. 21, 2014), *aff'd*, 644 F. App'x 928 (11th Cir. 2016)); *see Boatswain v. Martinez*, 544 F. App'x 409, 410 (5th Cir. 2013); *Tedesco v. Sec'y for Dep't of Corr.*, 190 F. App'x 752, 758 (11th Cir. 2006) ("[N]othing in *Wolff* or its progeny constitutionally required providing [petitioner] with a copy of the test results prior to his hearing.").

Furthermore, there is no evidence in the record which indicates that the laboratory results were altered.[4]

Regardless, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *O'Bryant*, 637 F.3d at 1214 (citing *Hill*, 472 U.S. at 456). Colon-Nales's admission of guilt at the disciplinary hearing undermines his suggestion that he had an available defense. His admission of guilt alone satisfies the "some evidence" requirement to sustain the findings of the disciplinary hearing. *Williams v. O'Brien*, No. 7:08cv424, 2008 WL 2943146, at *2 n.5 (W.D. Va. July 30, 2018) (holding that, based on petitioner's admission, there was sufficient evidence to support the disciplinary hearing officer's finding).

Furthermore, photographs of the contraband and the sworn statement of SIS Technician H. Glass also were sufficient to support the DHO's finding. None of this is dependent upon the laboratory report that allegedly was forged. *See Williams v. Fountain*, 77 F.3d 372, 376 (11th Cir. 1996) (finding there was some evidence in the record to support the DHO's decision where the DHO relied on prisoner's admission that he had participated in a physical altercation resulting in injury to another

---

[4] Colon-Nales argues that because H. Glass amended the incident report, the laboratory report was necessarily altered as well.

inmate). Thus, the record was "not so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457.

Accordingly, because "some evidence" supported the DHO's decision and Colon-Nales's due process rights as set forth in *Wolff* were not otherwise violated, the prison's disciplinary decision must be upheld.

### III. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **DENY** Colon-Nales's petition under 28 U.S.C. § 2241.

2. Direct the clerk of the court to close the case file.

At Pensacola, Florida, this 26th day of April, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**